UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CENTRAL VALLEY EDEN ENVIRONMENTAL DEFENDERS, LLC,<br><br>Plaintiff,<br><br>v.<br><br>CHAMPION HOME BUILDERS, INC., a Delaware corporation; SKYLINE CHAMPION CORPORATION, an Indiana corporation; and DOES 1–10, inclusive,<br><br>Defendants. | No. 2:23-cv-01273-DJC-DB<br><br><u>ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS WITHOUT PREJUDICE</u> |

Plaintiff Central Valley Eden Environmental Defenders, LLC alleges that Champion Home Builders, Inc., Skyline Champion Corporation, and Skyline Corporation, as well as 10 Doe Defendants (together, "Defendants"), have violated the Clean Water Act by failing to properly file certain permits and failing to comply with regulations related to stormwater discharge and other water pollutants. Champion Home Builders, Inc. and Skyline Champion Corporation (together, "Champion") seek dismissal of the First Amended Complaint, arguing that Plaintiff lacks standing, that Plaintiff fails to state a claim, and that some claims are time-barred and/or moot. For

1

the reasons set forth below, because the Court finds that Plaintiff fails to plead independent factual allegations sufficient to establish associational standing under Article III, the Court will grant Champion's Motion to Dismiss (ECF No. 15) on standing grounds. Plaintiff has fourteen (14) days to file a Second Amended Complaint.

## BACKGROUND

### I. Factual and Statutory Background

Champion Home Builders, Inc. manufactures modular homes and buildings at a facility and plant located at 1720 East Beamer Street, Woodland, California. (*See* First Am. Compl. for Injunctive and Decl. Relief, Civil Penalties, and Remediation (ECF No. 11) ¶¶ 22, 79, ("First Amended Complaint" or "FAC").) Champion Home Builders, Inc.'s facility in Woodland, California is owned and operated by Skyline Champion Corporation, which was originally formed under the name of Skyline Corporation. (*See id.* ¶¶ 24-27.) Skyline Champion Corporation has allegedly owned and operated Champion Home Builders, Inc. since at least June 1, 2018. (*See id.* ¶ 27.)

Champion's facility in Woodland, California ("the Woodland Facility") is subject to certain regulations under the Clean Water Act, 33 U.S.C. §§ 1251-1387 ("CWA"), including regulations under the State of California's Industrial General Permit. (*See id.* ¶ 22.) The Clean Water Act makes it unlawful to discharge "any pollutant by any person" except as authorized by and in compliance with other sections of the CWA, including, relevant here, 33 U.S.C. § 1342. 33 U.S.C. § 1311(a). Section 402 of the CWA authorizes the Administrator of the Environmental Protection Agency ("EPA"), as part of the National Pollutant Discharge Elimination System ("NPDES"), to "issue a permit for the discharge of any pollutant, or combination of pollutants . . . , upon condition that such discharge will meet either (A) all applicable requirements under [the CWA], or (B) . . . such conditions as the Administrator determines are necessary to carry out the provisions of this chapter." *Id.* § 1342(a)(1). Alternatively, the States, with EPA approval and continuing supervision, may issue the permits themselves and take primary responsibility for the permitting scheme. *See id.* § 1342(b); *S. California All. of*

*Publicly Owned Treatment Works v. U.S. Env't Prot. Agency*, 853 F.3d 1076, 1078 (9th Cir. 2017). California has assumed primary responsibility for the NPDES permitting program since 1974. *See S. California All. of Publicly Owned Treatment Works*, 853 F.3d at 1078.

Subsection (p) of the Clean Water Act provides a regulatory scheme for municipal and industrial stormwater discharges that are federally regulated as pollutants,[1] including, relevant here, any "discharge associated with industrial activity." 33 U.S.C. § 1342(p)(2)(B);[2] *see also Env't Def. Ctr., Inc. v. U.S. E.P.A.*, 344 F.3d 832, 841–43 (9th Cir. 2003). Under California's NPDES program, rather than provide individual permits authorizing a specific entity to discharge a pollutant in a particular place that is issued after an informal agency adjudication process, *see Alaska Cmty. Action on Toxics v. Aurora Energy Servs., LLC*, 765 F.3d 1169, 1171 (9th Cir. 2014), California has issued a general permit that applies to entire classes of hypothetical dischargers following notice-and-comment rulemaking. *See id.* (citing 40 C.F.R. § 122.28(b)). This general permit requires an entity seeking coverage to submit a "notice of intent" to discharge a pollutant under the general permit, *see id.* (citing 40 C.F.R. § 122.28(b)(2)).

California's Industrial General Permit has four basic requirements:

---

[1] As rain falls, the water collects contaminants and impurities from the ground that then make their way into drains and sewers, which eventually lead to federally protected bodies of water, and these sewers are sometimes used to directly discharge contaminants or waste. *See Env't Def. Ctr., Inc. v. U.S. E.P.A.*, 344 F.3d 832, 840 (9th Cir. 2003). The Clean Water Act defines "pollutants" as "dredged soil, solid waste, incinerator residue, sewage, garbage, sewage sludge, munitions, chemical wastes, biological materials, radioactive materials, heat, wrecked or discarded equipment, rock, sand, cellar dirt and industrial, municipal, and agricultural waste discharged into water . . . ." 33 U.S.C. § 1362(6).

[2] Specifically, "[s]torm water means storm water runoff, snow melt runoff, and surface runoff and drainage[,]" 40 C.F.R. § 122.26(b)(13), and "[s]torm water discharge associated with industrial activity means the discharge from any conveyance that is used for collecting and conveying storm water and that is directly related to manufacturing, processing or raw materials storage areas at an industrial plant[,]" *id.* § 122.26(b)(14). The term "storm water discharge associated with industrial activity" is quite broad; though it "does not include discharges from facilities or activities excluded from the NPDES program[,]" it does include, "storm water discharges from industrial plant yards; . . . manufacturing buildings; storage areas (including tank farms) for raw materials, and intermediate and final products; and areas where industrial activity has taken place in the past and significant materials remain and are exposed to storm water." *Id.*

> First, permittees must implement best management practices ("BMPs") to reduce or prevent pollutants in storm water discharges. Second, the Permit forbids discharges of storm water that cause or contribute to an exceedance of applicable Water Quality Standards in the applicable water quality or basin plan. Third, permittees must develop a Storm Water Pollution Prevention Plan ("SWPPP") in compliance with Section B of the Permit, which includes filing annual reports with the Regional Water Quality Control Board.

*San Francisco Baykeeper v. Levin Enters., Inc.*, 12 F. Supp. 3d 1208, 1212 (N.D. Cal. 2013) ("*S.F. Baykeeper*") (citation omitted).

Plaintiff alleges that Defendants have violated the CWA by failing to comply with California's Industrial General Permit. More specifically, Plaintiff alleges that Defendants have violated the Industrial General Permit by: (1) submitting a deficient SWPPP and failing to follow the SWPPP (*see* FAC ¶¶ 84–99, 113–16 (first cause of action)); (2) falsifying annual reports (*see id.* ¶¶ 100, 121–26 (third cause of action)); (3) providing incomplete monitoring reports (*see id.* ¶¶ 101, 121–26 (third cause of action)); (4) failing to implement best conventional treatments for conventional pollutants ("BCT") and best available technology for toxic and non-conventional pollutants ("BAT") when implementing its BMPs or best management practices at the Woodland Facility (*see id.* ¶¶ 102–05, 127–30 (fourth cause of action)); (5) discharging contaminated stormwater (*see id.* ¶¶ 106–07, 131–37 (fifth cause of action)); (6) failing to comply with certain exceedance threshold reports (*see id.* ¶¶ 108–10, 138–41 (sixth cause of action)); and (7) failing to train employees (*see id.* ¶¶ 111–12, 142–45 (seventh cause of action)). (*See also id.* ¶¶ 117–20 (alleging in the second cause of action that Defendants failed to develop and implement an adequate monitoring and reporting program).)

As a result of these alleged violations, Plaintiff brings seven causes of action and pursues declaratory, injunctive, and civil relief. (*See* FAC at 29–30.) Plaintiff asks that the Court declare that Defendants have violated and are in violation of the CWA. Plaintiff requests the Court to: (1) order Defendants to comply with the NPDES

permitting requirements in the Industrial General Permit and the CWA; (2) enjoin Defendants from discharging pollutants until Defendants have developed and implemented an adequate SWPPP or storm water pollution prevention plan that uses appropriate BMPs or best management practices, including BCTs or best conventional treatments for conventional pollutants and BATs or best available technology for toxic and non-conventional pollutants; and (3) require Defendants to take appropriate actions to restore the quality of the United States waters impaired by activities at the Woodland Facility.  Plaintiff finally (1) seeks civil penalties from Defendants of $56,460 per day per violation for each violation of the Clean Water Act, (2) asks for reasonable attorneys' fees and costs (excluding expert witness fees), and (3) asks for any other relief that may be just and proper.

## II.   Procedural Background

Plaintiff filed the initial Complaint on June 30, 2023.  (*See* ECF No. 1.)  Following a motion to dismiss filed by Champion (*see* ECF No. 6), Plaintiff filed the First Amended Complaint.  Champion then filed the instant Motion to Dismiss.  (*See* Champion's Not. of Mot. and Mot. to Dismiss FAC; Mem. of P. and A. in Supp. Thereof (ECF No. 15) ("Champion's Motion" or "MTD").)  Plaintiff then sought leave to amend the First Amended Complaint (*see* Pl.'s Not. of Mot. and Mot. for Leave to File Second Am. Compl. Under Fed. R. Civ. P. 15(a)(2) (ECF No. 17) ("Plaintiff's Motion" or "MLTA"); *also* Proposed Second Am. Compl. for Injunctive Relief and Declaratory Relief, Civil Penalties and Remediation (ECF No. 19) ("Proposed Second Amended Complaint" or "PSAC"), which Champion opposed, for largely the same grounds raised in Champion's Motion to Dismiss.  (*See* Champion's Opp'n to Pl.'s MLTA (ECF No. 20) ("Champion's Opposition" or "MLTA Opp'n").)  Plaintiff filed a Reply on December 23, 2023 explaining why leave to amend would not be futile.  (*See* Pl.'s Reply to Champion's Opp'n to MLTA (ECF No. 21) ("Plaintiff's Reply" or "Reply").)  The Court heard arguments for Defendants' and Plaintiff's Motions on January 4, 2024, where Attorney Edward E. Yates appeared for Plaintiff, and Attorney Daniel P. Brunton

appeared for Defendants. Although Plaintiff did not file an Opposition to the Motion to Dismiss while its Administrative Motion to Alter the Briefing Schedule on Champion's Motion (ECF No. 16) was pending, at oral argument, Plaintiff indicated it would submit on the basis of its Reply in support of its Motion to Amend (ECF No. 21), which addressed the standing issues that are the subject of this Order (*see* Reply at 8–9).

## DISCUSSION

### I. Champion Brings a Facial Challenge Under Rule 12(b)(1).

Champion contest this Court's ability to hear this case, first by challenging Plaintiff's associational standing under Article III, and second by claiming that this Court lacks subject matter jurisdiction because Plaintiff has failed to strictly comply with the CWA's notice requirements for bringing a citizen suit. (*See* MTD at 7–9 (challenging the notice); *id.* at 13–14 (challenging Plaintiff's standing to sue).) Normally, a court determining whether Article III standing or subject matter jurisdiction exists under Federal Rule of Civil Procedure 12(b)(1) is limited to the allegations in the complaint and any materials that may be judicially noticed or are incorporated by reference into the complaint, analyzing the question just as it would under a 12(b)(6) motion to dismiss. *See, e.g.*, *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) ("*SAFE*")) (describing a so-called "facial attack"). However, a party may also bring a factual attack that disputes the truth of the allegations in the complaint and raise matters and evidence outside of the pleadings. *See id.* The difference between a facial and a factual attack is crucial because a district court errs when it reviews evidence outside of the pleadings during a facial attack. *See, e.g.*, *Salter v. Quality Carriers, Inc.*, 974 F.3d 959, 964–65 (9th Cir. 2020) (vacating and remanding the district court's order remanding the case to state court after construing an attack as a factual rather than a facial attack, thereby applying the wrong standard). For a facial attack, the court, accepting the allegations as true and drawing all reasonable inferences in the opponent's favor, "determines whether the allegations

are sufficient as a legal matter to invoke the court's jurisdiction." *Salter*, 974 F.3d at 964 (citation and internal quotation marks omitted).  But "[w]hen a factual attack is mounted, the responding party 'must support her jurisdictional allegations with "competent proof" . . . under the same evidentiary standard that governs in the summary judgment context.'" *Id.* (citations omitted).

Here, the Court concludes that Champion brings a facial challenge as to Plaintiff's Article III standing.  *See SAFE*, 373 F.3d at 1039.  Champion argues at points that "Plaintiff fails to meet its burden to plead facts establishing standing[,]" (MTD at 13,) and that "Plaintiff has failed to plead additional facts sufficient to show it has standing." (MLTA Opp'n at 17.)  Thus, Champion "has not really challenged the truth of [Plaintiff]'s 'plausible allegations.'"  *Salter*, 974 F.3d at 964.

## II.  Plaintiff Fails to Properly Plead Any Alleged Harms.

The Supreme Court has "established that the irreducible minimum of standing contains three elements." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).  To establish Article III standing,

> a plaintiff must show (1) that it has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Ass'n of Irritated Residents v. U.S. Env't Prot. Agency*, 10 F.4th 937, 943 (9th Cir. 2021) (quoting *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000)).  An association has standing to bring suit on behalf of its members when its members would otherwise have standing to sue in their own right, the interests at stake are germane to the organization's purpose, and neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit. *Friends of the Earth, Inc.*, 528 U.S. at 171 (citing *Hunt v. Washington State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977)).

1    "The party invoking jurisdiction bears the burden of establishing the[ ] [three]
2    elements [of standing]." *Lujan*, 504 U.S. at 561 (citations omitted). But standing is not
3    dispensed in gross. *Lewis v. Casey*, 518 U.S. 343, 358 n.6 (1996). Since they are not
4    mere pleading requirements but rather an indispensable part of the plaintiff's case,
5    each element must be supported in the same way as any other matter on which the
6    plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence
7    required at the successive stages of the litigation. *Lujan*, 504 U.S. at 561 (citations
8    omitted). In addition, "a plaintiff must demonstrate standing separately for each form
9    of relief sought." *Friends of the Earth, Inc.*, 528 U.S. at 185 (first citing, as an example,
10   *City of Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983) ("*Lyons*"); and then citing *Lewis*,
11   518 U.S. at 358 n.6)). Though a plaintiff may establish standing to sue for damages
12   based on past exposure to harm, where, as here, the plaintiff seeks prospective or
13   injunctive relief, the plaintiff must then establish that she suffers from the "continuing,
14   present, adverse effects." *Lujan*, 504 U.S. at 564 (quoting *Lyons*, 461 U.S. at 102
15   (quoting *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974))). However, "private
16   plaintiffs, unlike the Federal Government, may not sue to assess penalties for wholly
17   past violations, but . . . [may sue] for violations that are ongoing at the time of the
18   complaint and that could continue into the future if undeterred." *Friends of the Earth,*
19   *Inc.*, 528 U.S. at 188 (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 106–08
20   (1998)).
21          Plaintiff seeks to assert associational standing. (*See* FAC ¶¶ 9-27; Reply at 8-9.)
22   Ultimately, Plaintiff fails to establish standing due to its failure to plead sufficient facts
23   to find that Plaintiff has suffered or will continue to suffer any alleged harm to its
24   aesthetic, informational, and recreational interests. *See Lujan*, 504 U.S. at 561.
25   *Compare with Civil Rights Educ. & Enf't Ctr. v. Hospitality Prop. Tr.*, 867 F.3d 1093,
26   1098–1099 (9th Cir. 2017) (finding pleadings adequate to satisfy a facial attack). That
27   is, Plaintiff fails to "demonstrate a concrete and particularized injury caused by the
28   defendant[s] and redressable by the court [that] ensures that federal courts decide

only 'the rights of individuals,' and that federal courts exercise 'their proper function in a limited and separated government[.]'" *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (first quoting *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 170 (1803); and then quoting John G. Roberts, Jr., *Article III Limits on Statutory Standing*, 42 Duke L. J. 1219, 1224 (1993)).

For the first element of individual standing, Plaintiff pleads an injury to the aesthetic, recreational, and scientific use and enjoyment of "the Sacramento River, a tributary of the Sacramento-San Joaquin River Delta Waterways[,]" where Plaintiff's members "use those waters as their watersheds for kayaking, canoeing, camping, cycling, recreation, sports, fishing, swimming, hiking, bird watching, photography, nature walks, and scientific study." (FAC ¶ 13.)  However, Plaintiff fails to include any independent factual allegations to support this single conclusory statement that one or more of its unidentified members ever again intends to "use those waters as their watersheds for kayaking, canoeing, camping, cycling, recreation, sports, fishing, swimming, hiking, bird watching, photography, nature walks, and scientific study." (*Id.* ¶ 13.)  Therefore, the Court concludes these threadbare allegations are the sort of "formulaic recitation" of the requirements for standing against which the Supreme Court has cautioned.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("*Twombly*"); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" (quoting *Twombly*, 550 U.S. at 557)).

Plaintiff also pleads a concrete injury to its substantive right to the information that Defendants must disclose and report regarding its monitoring and compliance with the CWA and the Industrial General Permit. (*See id.* ¶ 16.)  *See also Inland Empire Waterkeeper v. Corona Clay Co.*, 17 F.4th 825, 832–33 (9th Cir. 2021) (recognizing that the failure to follow the procedural elements of an NPDES permits program requiring record retention of discharge sampling and filing reports as "the subject of a CWA citizen suit" was "settled" and that disclosure, monitoring, and

reporting requirements "serve the public's interest in clean water and the environment[,] [which] [t]he CWA elevated [as an cognizable] interest by providing a cause of action to affected citizens." (citing *Lujan*, 504 U.S. at 578; 33 U.S.C. § 1365(a), (g))). However, Plaintiff has failed to establish how any of its members has an intended use for this information that was not disclosed, so Plaintiff cannot show how the alleged injuries affect it or its members "in a personal and individual way." *Lujan*, 504 U.S. at 560 n.1. Without such allegations, Plaintiff asserts nothing more than a generalized grievance, which has never been enough. *See, e.g.*, *Carney v. Adams*, 592 U.S. 53, 59 (2020); *Lance v. Coffman*, 549 U.S. 437, 439–41 (2007) (*per curiam*) (detailing the Supreme Court's "lengthy pedigree" of rejecting standing based on generalized grievances).

For instance, unlike the members of the environmental organization in *Inland Empire Waterkeeper*, 17 F.4th 825, Plaintiff has not averred or otherwise submitted evidence showing that its members have a need for accurate information or for the information to be disclosed, as by members not being able to swim in the water because of fear that there has been increased pollution, which cannot be confirmed or denied without the disclosed information, or by members not being able to provide reliable information for use in educational or commercial settings without the disclosed information. *See* 17 F.4th at 833–34. Nor, for that matter, has Plaintiff ever identified when one of its members has used the Sacramento River in the past, or when one of its members intends to use the Sacramento River in the future, or how Plaintiff's members have had their activities along the Sacramento River impacted by the CWA violations at the Woodland Facility. *Compare with Summers v. Earth Island Inst.*, 555 U.S. 488, 495 (2009). Thus, Plaintiff has failed to provide "specific facts[ ] [showing] not only that [the Sacramento River] w[as] in fact being threatened by [pollution and discharge stemming from the Woodland Facility], but also that one or more of [Plaintiff's] members would thereby be 'directly' affected apart from their

'special interest in the subject." *Lujan*, 504 U.S. at 563 (first quoting *Sierra Club v. Morton*, 405 U.S. 727, 735, 739 (1972)); and then citing *Hunt*, 432 U.S. at 343).

**III. Conclusion**

Plaintiff has failed to plead independent factual material to establish a concrete and particularized injury-in-fact sufficient to confer Article III standing. *See Twombly*, 550 U.S. at 555. As a result, the Court GRANTS Champion's Motion to Dismiss for lack of Article III standing. (*See* MTD at 13–14.) Further, because the Court concludes that it lacks jurisdiction over the matter for lack of Article III standing, the Court does not decide the remaining issues presented in Champion's Motion to Dismiss, including whether this Court lacks subject matter jurisdiction over the specific CWA cause of action Plaintiff tries to bring due to the allegedly defective notice. *See Steel Co.*, 523 U.S. at 94 (citations omitted); *see also Warth v. Seldin*, 422 U.S. 490, 498 (1975) (explaining that standing addresses whether a particular litigant may bring their case before a federal court); *Allen v. Wright*, 468 U.S. 737, 750–51 (1984) (explaining that standing "is perhaps the most important of the[ ] doctrines[ ]" that limit a federal court's ability to hear a case and decide an issue), *abrogated on other grounds by Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014).

Because the Court DISMISSES the First Amended Complaint for lack of subject matter jurisdiction, the Court does so WITHOUT PREJUDICE because this is not an adjudication on the merits. *See, e.g.*, *Hampton v. Pac. Inv. Mgmt. Co. LLC*, 869 F.3d 844, 846 (9th Cir. 2017). *Accord Iten v. Los Angeles*, 81 F.4th 979, 993 (9th Cir. 2023) (Gordon, District J., concurring in part). As a result, Plaintiff must file a Second Amended Complaint within fourteen (14) days of this Order.[3]

---

[3] While Plaintiff has moved for Leave to File a Second Amended Complaint (ECF No. 17), the Proposed Second Amended Complaint (ECF No. 19) appears to suffer from the same defects related to standing as the operative First Amended Complaint. (*Compare* PSAC ¶¶ 9–27 *with* FAC ¶¶ 9–27 (providing the exact same).) Accordingly, the Court will deny leave to file the Proposed Second Amended Complaint (ECF No. 19) but will authorize Plaintiff to file a different Second Amended Complaint that responds to the standing issues identified in this Order. Plaintiff may also amend other portions of its Complaint if it so chooses.

**ORDER**

For the reasons set forth above, the Court GRANTS Defendant Champion's Motion to Dismiss Plaintiff's First Amended Complaint for lack of standing and DENIES AS MOOT the remaining requests in Champion's Motion to Dismiss (ECF No. 15). Plaintiff has fourteen (14) days from the docketing of this Order to file the Second Amended Complaint.

Further, while Plaintiff may file a Second Amended Complaint in response to this Order, the Court DENIES Plaintiff's Motion for Leave to File the Second Amended Complaint (ECF No. 17) seeking leave to file the Proposed Second Amended Complaint, lodged at ECF No. 19. Plaintiff's Administrative Motion to Alter the Briefing Schedule on Champion's Motion (ECF No. 16) is also denied as moot.

This Order resolves all pending motions.

IT IS SO ORDERED.

Dated:  **January 9, 2024**

Hon. Daniel J. Calabretta
UNITED STATES DISTRICT JUDGE

DJC3 – CVEED.23cv1273.MTD